UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GENEVARA LYNN McCLELLAN,

      Plaintiff,

v.                                                CASE No. 8:12-CV-376-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____

## O R D E R

    The plaintiff in this case seeks judicial review of the denial of her claim for Social Security disability benefits.* Because the decision of the Commissioner of Social Security is supported by substantial evidence and the plaintiff has not shown any reversible error, the decision will be affirmed.

I.

    The plaintiff, who was forty-seven years old at the time her insured status expired and who has a high school education, has worked as a

_____

*The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 14).

citrus grader and shipper's helper (Tr. 61-62, 182, 219). She filed a claim for Social Security disability benefits, alleging that she became disabled due to "[h]erniated disc in neck, back, shoulder, nerves [and] headaches" (Tr. 209). Her claim was denied initially and upon reconsideration.

At her request, the plaintiff then received a _de novo_ hearing before an administrative law judge. The law judge found that, through her date last insured of December 31, 2010, the plaintiff had severe impairments of "degenerative disc disease of the cervical and lumbar spine with radiculopathy into the right lower extremity, stenosis, and dysthymia" (Tr. 23). The law judge further found that the plaintiff's headaches did not constitute a severe impairment (id.). He concluded that, through the date last insured, the plaintiff had the residual functional capacity to perform less than the full range of sedentary work with the following restrictions (Tr. 24):

> The claimant is able to lift and carry ten pounds occasionally, stand and walk for two hours in an eight-hour workday, and sit up to six hours with normal breaks. She must never use foot controls with the right lower extremity and never climb ladders, ropes or scaffolds. The claimant can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. The claimant can

occasionally reach overhead with the upper extremities and frequently, but not constantly, reach in other directions. The claimant should avoid concentrated exposure to hazards such as machinery and unprotected heights. The claimant has the ability to understand, remember, and carry out simple instructions; make simple work decisions; interact appropriately within a routine setting; and would not be off task for ten percent or more of the time. The claimant will need a sit/stand option at will.

The law judge decided that these limitations prevented the plaintiff from returning to her past relevant work (Tr. 29). However, based upon the testimony of a vocational expert, the law judge found that there are jobs that exist in significant numbers in the national economy that the plaintiff could perform, such as lens inserter, lens block gauger, and food/beverage order clerk (Tr. 30). The law judge therefore ruled that the plaintiff was not disabled (Tr. 31). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3). In this case, moreover, the plaintiff must show that she became disabled before her insured status expired on December 31, 2010, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact

made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper

legal standards were applied and legal requirements were met.  <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff attacks the law judge's decision on three grounds. The relevant evidence on those challenges is that which has a bearing on the plaintiff's condition between May 1, 2009, the alleged disability onset date, and December 31, 2010, the plaintiff's date last insured.  Much of the evidence in the record either pre-dates or post-dates the pertinent period. That evidence is relevant only to the extent that it sheds light on the plaintiff's condition during the period at issue.  Notably, the plaintiff had a prior claim for disability benefits that was denied by an administrative law judge on April 7, 2009, and this denial was recently affirmed by this court, so that any evidence prior to April 7, 2009, has no meaningful weight.  <u>See</u> <u>McClellan</u> v. <u>Astrue</u>, Case No. 8:11-CV-856-TBM (M.D. Fla. 2012), Doc. 8, p. 31.  The relevant evidence does not sustain the plaintiff's challenges to the law judge's decision.

The plaintiff first asserts that the law judge erred because he failed to note that fibromyalgia had been diagnosed by tender points (Doc. 19, p. 9). This assertion lacks merit because, for several reasons, the law judge validly discounted the impression of fibromyalgia.

"Fibromyalgia is a condition characterized by widespread pain in joints, muscles, tendons and soft tissues." Heppell-Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 695 n.1 (11th Cir. 2006). The Eleventh Circuit has noted that the hallmark of fibromyalgia is a lack of objective evidence. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). As explained in Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996):

> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and – the only symptom that discriminates between it and other diseases of a rheumatic character – multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as

having fibromyalgia) that when pressed firmly
cause the patient to flinch.

The court added that "[s]ome people may have such a severe case of

fibromyalgia as to be totally disabled from working ..., but most do not." Id.

at 307.

On this issue the plaintiff relies upon an assessment of

fibromyalgia purportedly made by Dr. Fernando L. Miranda, the plaintiff's

treating pain management doctor.  In a treatment note dated April 26, 2011,

it was stated that, "[g]iven [the plaintiff's] chronic widespread pain going on

for greater than six months, we discussed the possibility of fibromyalgia" (Tr.

486).  The note indicated 16 tender points upon physical examination of the

plaintiff, and the assessment included fibromyalgia (id.).  A trial of Savella

was therefore recommended, and a starter pack and prescription was provided

to the plaintiff (Tr. 487).

Opinions from treating physicians are entitled to substantial or

considerable weight unless there is good cause for not giving them such

weight.  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004).  Good

cause exists when the treating physician's opinion is not bolstered by the

evidence, the evidence supports a contrary finding, or when the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The only mention of fibromyalgia in the record is in the one treatment note previously discussed. That note indicates that Dr. Miranda was simply the "Supervising Physician" and that an ARNP was responsible for "Evaluating and Dictating" (Tr. 487). In other words, it was a nurse practitioner who made the assessment of fibromyalgia based upon her pressing on the tender points. Importantly, under the regulations, nurse-practitioners are not classified as acceptable medical sources. 20 C.F.R. 404.1513(d)(1).

In addition, "[f]ibromyalgia is a rheumatic disease and the relevant specialist is a rheumatologist." Sarchet v. Chater, supra, 78 F.3d at 307. Dr. Miranda is not a rheumatologist, but a pain management physician. Consequently, the assessment of fibromyalgia is outside Dr. Miranda's area of specialty, so that the law judge could reasonably discount the assessment even if it had been made by Dr. Miranda and not a nurse practitioner.

The plaintiff takes issue with the law judge's statement that Dr. Miranda "began trials of medications for possible diagnosis of fibromyalgia, but this is not a confirmed diagnosis with identification of corresponding tender point locations" (Tr. 28). Thus, the plaintiff complains that the law judge "failed to note that Dr. Miranda had in fact noted that [the plaintiff] had 16/18 tender points for fibromyalgia" (Doc. 19, p. 10).

The comment that the plaintiff "has 16/18 tender points positive for fibromyalgia" was on the first page of a one and one-half page treatment note. The law judge expressly referenced that note (Tr. 28). Therefore, it is implausible to think that the law judge overlooked the comment about the tender points.

Rather, the law judge discounted it. When he stated that "this is not a confirmed diagnosis with identification of corresponding tender point locations," he was not saying that tender points were not noted, but that the assessment was conclusory because there was not "identification of corresponding tender point <u>locations</u>" (<u>id.</u>) (emphasis added). Rheumatologists commonly include a diagram showing where on the body

the tender points are located. In this case, there was no such diagram or any other description of where the tender points were located. Accordingly, the law judge reasonably concluded that there was not "a confirmed diagnosis" of fibromyalgia (id.).

Furthermore, in order to prevail, the plaintiff must show that she had functional limitations from her fibromyalgia that were not included in the law judge's determination of the plaintiff's residual functional capacity. In this respect, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005) (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)). In other words, it is the functional limitations that determine disability. Moore v. Barnhart, supra, 405 F.3d at 1213 n. 6; McCruter v. Bowen, supra. Significantly, Dr. Miranda provided no opinion setting forth any functional limitations from fibromyalgia.

Moreover, the plaintiff makes no effort to show how her fibromyalgia creates a specific functional limitation beyond the law judge's residual functional capacity. In fact, the plaintiff did not include fibromyalgia among her impairments listed in the Disability Report that supports the application (Tr. 209), and she did not mention that condition in her testimony. Therefore, the law judge could reasonably conclude that, even if the plaintiff had fibromyalgia, she could perform work within the law judge's very restrictive residual functional capacity determination that limited the plaintiff to a narrow range of sedentary work.

In a related argument, the plaintiff attacks the law judge's consideration of the opinion of Dr. Matthew V. Burry, a one-time consulting neurosurgeon (Doc. 19, pp. 10-11). On April 4, 2011, Dr. Burry examined the plaintiff at the request of Dr. Miranda (Tr. 485). Dr. Burry reported that the plaintiff's cervical spine MRI revealed some neuroforaminal stenosis bilaterally at C4-5, and the lumbar spine MRI showed mild spondylosis (id.). He found "no motor, sensory or reflex abnormalities with exception of a right positive Phalen's test" (id.). Dr. Burry indicated that the plaintiff was not a

candidate for surgery because "there were no anatomical explanations for her constellation of symptoms, ... her mild to moderate spondylosis does not account for her cervical, thoracic and lumbar pain and sensation of dragging legs" (id.; see also Tr. 486).

The plaintiff contends that her fibromyalgia, which was assessed subsequent to Dr. Burry's opinion, would explain her symptoms. Thus, she argues that "since the ALJ dismisses the fibromyalgia diagnosis, the decision erroneously rests on the neurosurgeon's assessment" (Doc. 19, p. 11). This argument is meritless because, as previously explained, the law judge reasonably discounted the diagnosis of fibromyalgia.

Moreover, the law judge did not rest his decision solely upon the treatment note of Dr. Burry, as the plaintiff asserts. Rather, the law judge relied on and discussed the objective medical evidence, including the opinions of the treating and consultative physicians (Tr. 24-29). In fact, the law judge gave "significant weight to the claimant's pain management doctor" (Tr. 28). The law judge also considered the plaintiff's testimony concerning her pain, activities of daily living, and functional limitations (Tr.

25). Despite Dr. Burry's failure to find any explanation for the plaintiff's "constellation of symptoms," the law judge restricted the plaintiff to less than sedentary work. Thus, as his decision expressly states, the law judge's residual functional capacity finding is based on his "consideration of the entire record" (Tr. 24).

The plaintiff asserts, second, that the law judge inconsistently evaluated the opinion of Dr. Ladapo Shyngle, a consultative physician (Doc. 19, pp. 11-13). In September 2009, Dr. Shyngle reported that the plaintiff had moderate cervical tenderness with paraspinal spasm and severe lumbosacral tenderness with paraspinal tenderness, right sided, but no thoracic tenderness (Tr. 386). Straight leg testing was positive (id.). Dr. Shyngle noted that the plaintiff had moderate limp gait, but was able to walk without an assistive device and she had "[n]ormal upright" posture (Tr. 387). The plaintiff's cervical spine forward flexion was 25 degrees, and her lumbar spine forward flexion was 45 degrees (Tr. 388). Dr. Shyngle found "[n]o weakness in any extremities to repetitive flexion/extension" (Tr. 387). Dr. Shyngle's impression included chronic cervical strain and chronic lumbar disc disease

with radiculopathy (id.).  Finally, Dr. Shyngle opined that the plaintiff "has

moderate to marked restriction for strenuous physical activities including

climbing, bending, lifting, twisting and prolonged walking because of chronic

lumbar disc disease" (id.).

With respect to Dr. Shyngle, the law judge stated (Tr. 28):

> It was the opinion of this doctor that claimant
> would have difficulty with strenuous physical
> activities, including climbing, bending, lifting, and
> twisting. She may also have difficulty with
> prolonged walking. It is noted that this doctor did
> not have any diagnostic test results in arriving at
> this opinion. The undersigned concurs that the
> claimant may have difficulty, at times, with
> strenuous physical activities and prolonged
> walking as well as repetitive bending, lifting, and
> climbing if she is in the degree of pain that
> required her to undergo cervical and lumbar
> epidural steroid injections. She may be somewhat
> limited if she was taking strong medication, but Dr.
> Shyngle did not give any reason for his findings.
> It appears that his decision was based on the
> claimant's own report of her medical impairments.
> Accordingly, the undersigned has given greatest
> weight to the clinical findings during the
> examination, but little weight to the restrictions
> given by this doctor because of his lack of
> explanation for these restrictions. Again, the
> undersigned notes that the claimant's surgeon

found little to explain the claimant's allegations and did not recommend surgery.

The plaintiff challenges this explanation, arguing that "[t]here is no substantial basis for giving weight to the examination of the physician without also giving weight to the conclusions" (Doc. 19, p. 12). This contention is unpersuasive for several reasons.

In the first place, the law judge's explanation for discounting Dr. Shyngle's conclusions is reasonable and supported by substantial evidence. In addition, the plaintiff has cited no authority suggesting that, if the law judge accepts a doctor's clinical findings, he must also accept the doctor's conclusions from those findings. Further, as a one-time examining consultant, Dr. Shyngle's opinion is not entitled to the same weight as a treating physician. See Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1160 (11th Cir. 2004). Moreover, under the regulations, the determination of the plaintiff's functional limitations in assessing the plaintiff's residual functional capacity is an issue reserved to the Commissioner. 20 C.F.R. 404.1527(d)(2).

In addition, as the Commissioner points out, the restrictions opined by Dr. Shyngle were not that different from the law judge's assessment of the plaintiff's residual functional capacity (Doc. 20, pp. 9-10). Thus, Dr. Shyngle restricted the plaintiff from "strenuous physical activities." The law judge's residual functional capacity finding of a narrow range of sedentary work "was consistent with Dr. Shyngle's assessment, as it did not allow Plaintiff to perform 'strenuous physical activities'" (id., p. 10). The Commissioner points out further that, according to the Dictionary of Occupational Titles, the three jobs identified by the vocational expert and found by the law judge to be performable by the plaintiff meet Dr. Shyngle's restrictions (id.).

For her final issue, the plaintiff attacks the law judge's credibility determination (Doc. 19, pp. 13-14). This contention also lacks merit.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required

evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge properly applied the Eleventh Circuit's pain standard. The law judge recognized the need to articulate a credibility determination, and he referred to the pertinent regulations and Social Security rulings (Tr. 24). He also set forth the controlling principles (id.). This demonstrates that the law judge applied the proper standards. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

Significantly, the law judge did not wholly discount the plaintiff's complaints of pain. The law judge discussed the plaintiff's testimony in his decision, including her complaints of "low back pain that radiates into her right leg" (Tr. 25). The law judge also noted the plaintiff's allegation that "her pain comes and goes and is worse when she sleeps" (id.). After considering the plaintiff's testimony, along with the objective medical evidence, the law judge greatly restricted the plaintiff to less than the full range of sedentary work with a sit/stand option and other limitations (Tr. 24).

In his credibility determination, the law judge gave a cogent explanation for declining to fully credit the plaintiff's subjective complaints of pain. Specifically, the law judge stated (Tr. 25):

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

After discussing the medical evidence of record, the law judge explained (Tr. 27):

> The undersigned has been convinced that the claimant has severe medically determinable impairments that impose some limitations in her ability to function, but not to the degree alleged. The claimant is alleging residuals of an accident that occurred in 2004. She has been treated conservatively with medication and epidural steroid injections. At the last visit to a neurosurgeon, this doctor opined that claimant did not need surgery and he could not explain the degree of claimant's complaints upon review of the diagnostic testing results. ... It is also noted that claimant told the doctor performing the independent psychiatric evaluation that she was treated at the hospital once every month just to keep up with her pain medication. The evidence does not have reports from any hospital for treatment once a month. Furthermore, the claimant told her pain management doctor that she was satisfied with her pain control and did not want any adjustment to her medication. Although the claimant testified to walking ½ block, standing twenty minutes and sitting for thirty to thirty-five minutes, the evidence of record does not substantiate these limitations. It appears that the claimant exaggerates her symptoms and limitations in functioning and she is only partially credible in her testimony.

The law judge stated further (Tr. 29):

> Although the evidence reveals that claimant has complaints of neck and back pain, she has been treated conservatively with medication. The claimant's diagnostic testing has shown limited findings that are not consistent with her numerous complaints. A neurosurgeon could not explain the numerous complaints after reviewing the MRI results and said that claimant was not a surgical candidate.

This explanation is sufficient to discount the plaintiff's subjective complaints. See Heppell-Libsansky v. Commissioner of Social Security, supra, 170 Fed. Appx. at 699.

The plaintiff argues that her allegations of pain and fatigue are supported by her diagnoses of fibromyalgia, lumbar radiculopathy, and degenerative disc disease, as well as "nerve conduction studies corroborat[ing] her complaints of right leg weakness" (Doc. 19, p. 14). This argument, however, is not sufficient to satisfy the requirements of the scheduling Order. That Order directs that any discrete challenge "must be supported by citations to the record of the pertinent facts" (Doc. 12, p. 2). The argument on this issue is entirely devoid of citations to facts in the record (see Doc. 19, pp. 13-14). Accordingly, the contention is deemed abandoned.

In all events, as previously explained, a mere diagnosis of an impairment is not sufficient to establish disability. Rather, it is necessary to show functional limitations from the impairments. By simply referring to diagnoses, the plaintiff fails to demonstrate how her impairments created any functional limitations beyond the law judge's residual functional capacity during the relevant period. See Moore v. Barnhart, supra, 405 F.3d at 1213 n. 6; McCruter v. Bowen, supra.

In sum, the law judge properly applied the Eleventh Circuit pain standard and, based on that standard, made a reasonable and adequately explained decision to decline to credit fully the plaintiff's subjective complaints. Of course, the law judge did accept the plaintiff's testimony to the extent that it indicated that the plaintiff was limited to a restricted range of sedentary work.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this _14th_ day of February, 2013.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE